IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ZACHARY WOODARD
as Surviving Spouse of Cheryl
Woodard, Deceased; as Administrator
of the Estate of Cheryl Woodard,
Deceased; and For the Benefit of
Reece Jackson Woodard, Minor Son,

    Plaintiffs,

      v.

                            CIVIL ACTION FILE
                            NO. 1:06-CV-2191-TWT

FORD MOTOR COMPANY,

    Defendant.

ORDER

      This is a products liability action.  It is before the Court on the Defendant's

Motion for Summary Judgment. [Doc. 36]. For reasons set forth below, the motion is

DENIED.

I.  BACKGROUND

      The Plaintiffs - family members of the deceased Cheryl Woodard - brought this

action in the State Court of Cobb County against the Ford Motor Company.  The

action was filed on August 15, 2006, and was then removed to this Court.  The

Plaintiffs asserted claims of strict liability, negligent design, and failure to warn.  This

action arises out of a motor vehicle accident that killed Cheryl Woodard when her 1993 Ford Explorer was struck broadside by another vehicle.  The Explorer rolled over a couple of times.  The Plaintiffs contend that Ms. Woodard's death was caused by excessive roof crush that broke her neck.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

The Defendant first argues that there is no competent evidence to support the Plaintiffs' failure to warn claim.  To support their claim, the Plaintiffs introduced expert testimony showing that the Defendant knew of the dangers of Explorer roof

collapse yet neglected to disclose this danger to the consumer. Under Georgia law, "[w]hether adequate efforts were made to communicate a warning to the ultimate user and whether the warning if communicated was adequate are uniformly held questions for the jury." Thornton v. E.I. DuPont de Nemours & Co., 22 F.3d 284, 289 (11th Cir. 1994). The cases cited by the Defendant do not support the argument that more than this is needed. The Plaintiffs are not suing on the grounds that the Defendant inadequately communicated a warning that the roof was inherently dangerous, but rather that the Defendant failed to disclose the risk of the collapsing roof at all. This is sufficient to proceed on a failure to warn claim. See Watkins v. Ford, 190 F.3d 1213, 1219 (11th Cir. 1999) ("Under Georgia law, a manufacturer breaches its duty to warn if it fails to (1) 'adequately communicate the warning to the ultimate user or (2) fail[s] to provide an adequate warning of the product's potential risks.'").

The Defendant also attacks the Plaintiffs' failure to warn claim on the ground that it "merges" with the design defect claim. The Defendant argues that the Plaintiffs' expert opinion concerning the failure to warn is actually "a criticism of the vehicle's roof design and is directly connected to the Plaintiff's design defect claim, which is barred due to the operation of the statute of repose." (Mot. for Summ. J., at 9). The Defendant's argument is contrary to Georgia's products liability statute, which states that "[n]othing . . . shall relieve a manufacturer from the duty to warn of a danger

arising from use of a product once that danger becomes known to the manufacturer."
O.C.G.A. § 51-1-11(c).  As the Georgia Supreme Court explained, "the exclusion
places failure-to-warn causes of action outside the ambit of the statute of repose,
thereby precluding use of the statute to relieve manufacturers of their liability for
failing to warn of a danger arising from the use of a product whenever that danger
becomes known to the manufacturers."  Chrysler Corp. v. Batten, 264 Ga. 723, 727
(1994); accord, Watkins, 190 F.3d at 1219 ("As stated by the Georgia Supreme Court,
it is possible to have a situation where the plaintiff is barred from bringing a design
defect claim and yet is allowed to proceed with a failure to warn claim based upon the
dangers arising from the same alleged design defect.").

The Plaintiffs have put forth sufficient evidence that the Defendant breached
its duty to warn.  The Plaintiffs' expert has provided evidence that the Defendant
knew of the unreasonable risk of roof collapse both before and after the release of the
1993 model Explorer.  The duty to warn, in Georgia, is a continuing one.  See, e.g.,
Watkins, 190 F.3d at 1218-19.  Through their expert witness, the Plaintiffs claim that
"Ford has secretly redesigned and strengthened roof/pillar structural strength on
various models, including the Explorer model, especially after the 1993 model."
(Mot. for Summ. J., Ex. C, at 11).  This was done, according to the Plaintiffs, in spite
of the Defendant's public pronouncements that "no safety need whatsoever is

addressed by this [Roof Crush Resistance] standard." (Mot. for Summ. J., Ex. C, at 10). Though likely unnecessary, the Plaintiffs presented enough evidence to show that the Defendant acquired knowledge of the Explorer's danger after the sale of the decedent's 1993 Explorer.

The Defendant raises its "merger" argument once more claiming that the failure to recall claim should be barred because it merges into the design defect standard. The Plaintiffs, through their expert's report, produced evidence that the Defendant failed to recall older models of its Explorer after the Defendant "secretly" improved the roof crush resistance on later models. (Mot. for Summ. J., Ex. C, at 11). This evidence indicates that the Defendant knew of a significant safety problem with the older models, such as the decedent's vehicle. The Plaintiffs have, therefore, presented enough evidence to thwart summary judgment as to this issue.

The Defendant's final assault on the failure to warn claim is that there is no proof that the decedent would have modified her behavior had a warning about the roof's unsafe condition existed. This argument will not be considered in detail as the Defendant did not raise this particular defense until its Reply Brief. See, e.g., International Telecommunications Exchange Corp. v. MCI, 892 F. Supp. 1520 (N.D. Ga. 1995); Brettner v. Colonial Pipeline Co., Slip Copy, 2007 WL 2071539 (N.D. Ga. 2007). There is no need for a supplemental response by the Plaintiffs since they have

already presented evidence that the decedent heeded the posted warnings that existed in her vehicle at the time of her accident.  The warnings instructed drivers to wear their seat belts, drive with care, and avoid unnecessary sharp turns.  (Pl.'s Resp. Br. in Opp'n to Mot. for Summ. J., at 6).  It is undisputed that the decedent was wearing her seatbelt and driving with care when the accident occurred.  Therefore, this case is easily distinguishable from cases in which the injured party admitted to not "follow[ing] or even read[ing] the installation instructions."  <u>Powell v. Harsco Corp.</u>, 209 Ga. App. 348, 350 (1993).

Plaintiff Zachary Woodard, as Administrator, also seeks damages for the decedent's pain and suffering.  The Plaintiff argues that Georgia law allows accident victims to recover survival damages, even if their death occurred instantaneously upon impact.  Georgia courts have allowed recovery in such instances where the victim perceived his impending death seconds before impact.  <u>See</u> <u>Monk v. Dial</u>, 212 Ga. App. 362 (1994); <u>Department of Transp. v. Dupree</u>, 256 Ga. App. 668, 680 (2002).  Georgia cases have gone so far as to allow recovery for pre-death pain and suffering against defendants who caused the initial crash.  <u>See generally</u>, <u>Monk</u>, 212 Ga. App. at 362; <u>Dupree</u>, 256 Ga. App. at 668.  Intuitively, this is because the victim perceives during life, or, survives momentarily, the cause of his or her rapidly approaching death.  A jury could find that the decedent anticipated the accident that caused her

death.        In addition, there is some evidence that the decedent may have survived the rollover, or at least one of the rolls in the rollover sequence.  The vehicle rolled over 2 ½ times.  (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 6).  The roof crushed into the occupant compartment at some point during the rollover sequence.  (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 16).  It is possible that the decedent made contact with the roof before it caved in.  (Sperry Dep. at 34).  Therefore, there is sufficient evidence of survivorship based on the grounds that the decedent survived some of the rollover sequence before the roof caved in.  This conclusion is bolstered considering that Georgia courts have allowed recovery when the decedent perceives the likely injury before it actually happens.  In such situations, a jury "could infer that decedent was aware of the impending crash, and from these circumstances could extrapolate the probable mental state of decedent in that last moment of consciousness."  Monk, 212 Ga. App. at 362.

Next, and perhaps more importantly, according to the medical examiner, Mrs. Woodard's death was only "almost instantaneous."  (Sperry Dep. at 49).  Given the nature of the catastrophic injury, and the relatively long response time by paramedics after the accident (five minutes), the record contains sufficient evidence to defeat summary judgment.  This conclusion is in accord with existing Georgia survivorship law.  Although factually distinguishable from this case, Georgia courts do not always

require witnesses from the scene to establish survivorship and have allowed a survivorship claim to be proven by the totality of the circumstances.  See, e.g., TGM Ashley Lakes, Inc. v. Jennings, 264 Ga. App. 456, 469 (2003) (pain and suffering recovery allowed where decedent was strangled and evidence indicated decedent survived for around 40 seconds, despite lack of direct testimony); Department of Human Resources v. Johnson, 264 Ga. App. 730, 738 (2003) (recovery for pain and suffering proper where the plaintiff presented expert testimony to establish timeline of survivorship).

Further, Georgia courts have allowed survival actions for pain and suffering where victims survived less than a minute after impact, including one case with survival of a mere fifteen seconds past the accident.  See Johnson, 264 Ga. App. at 738 (decedent survived "up to 15 seconds while being electrocuted"); TGM Ashley Lakes, 264 Ga. App. at 456 (decedent conscious for approximately 40 seconds); Beam v. Kingsley, 255 Ga. App. 715, 716 (2002) (pain and suffering recovery permitted where motorcyclist died within one or two minutes after impact and likely lost consciousness before death).  There is no principled way to distinguish those "almost instantaneous" deaths allowing recovery from the instant case, even if the survival time after impact with the roof was even shorter than fifteen seconds.  This is especially true considering that the decedent may have anticipated the accident, could

not have known about the unsafe condition of the roof (which contributed greatly to her death), and likely survived at least some of the rollover sequence.

Plaintiff Zachary Woodard, as Administrator, seeks punitive damages from the Defendant as part of his survivorship claim.  Georgia law provides that:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

O.C.G.A. § 51-12-5.1(b).  Accordingly, something more than the commission of a tort is required to support a claim for punitive damages.  MDC Blackshear, LLC v. Littell, 273 Ga. 169, 173 (2000); Cullen v. Novak, 201 Ga. App. 459, 460 (1991). Negligence alone, even gross negligence, will not provide the requisite support.  MDC Blackshear, LLC, 273 Ga. at 173.  Moreover, the alleged willful misconduct or aggravating circumstances must relate to the tort that is being sued upon.  Carter v. Spells, 229 Ga. App. 441, 444 (1997) (Banke, J., concurring) (citing McNorrill v. Candler Gen. Hosp., Inc., 188 Ga. App. 636 (1988)).

The Plaintiff argues that there is clear and convincing evidence that the Defendant acted willfully and wantonly to the point of conscious indifference. Chiefly, the Plaintiff relies on his expert's report to advocate that the Defendant was aware of the high risk of rollovers in Explorers, but that the Defendant nonetheless

manufactured roofs on the Explorers that failed to meet its internal standards.  (Mot. for Summ. J., Ex. C, at 14).  The Plaintiff further alleges that the Defendant publicly claimed that roof design did not affect safety when the Defendant indeed knew that roof crush could cause significant injuries.  (Mot. for Summ. J., Ex. C, at 11).  Finally, according to the Plaintiff, Ford chose to manufacture inadequate roofs in order to save a cost of $10 - $20 per vehicle.  (Mot. for Summ. J., Ex. C, at 12).  Then, allegedly knowing that liability would occur, the Defendant allegedly charged a "liability fee" in secret to its consumers in the total amount of $1.6 billion (or between $168 and $505 per vehicle).  (Mot. for Summ. J., Ex. C, at 13).  According to the Plaintiff, the Defendant still publicly claims that "roof crush/intrusion is not a safety hazard." (Mot. for Summ. J., Ex. C, at 11).

The Defendant, on the other hand, claims that the Plaintiff has not established the requisite scienter by clear and convincing evidence.   In fact, the Defendant's alleged conduct is enough to sustain punitive damages.[1]  Under Georgia law, any automobile manufacturer placing profit over safety risks punitive damages liability. See, e.g., Mack Trucks, Inc. v. Conkle, 263 Ga. 539 (1993); General Motors Corp. v.

---

[1]The Court notes that punitive damages may be justified even if a defendant has complied with applicable safety regulations if "there is other evidence showing culpable behavior."  Moseley, 213 Ga. App. at 885; cf. Welsh v. General Motors Corp., 949 F. Supp. 843 (N.D. Ga. 1996) (punitive damages not justified where the plaintiff presented no evidence that the defendant knew of the alleged defect).

Moseley, 213 Ga. App. 875, 885 (1994) (reversed on other grounds). In Mack Trucks,

the defendant chose not to reinforce frames on trucks - at a cost of $103 - despite pleas

from the defendant's engineering department to do so.  The Georgia Supreme Court

found this conduct to be a "conscious indifference to consequences" by a clear and

convincing evidence standard.  Mack Trucks, 263 Ga. at 544-45.  In Moseley, the

defendant complied with federal regulations but still was held liable for punitive

damages because of its "culpable behavior."  Moseley, 213 Ga. App. at 885.  The

defendant car manufacturer was aware of safety problems, which could have been

reduced "significantly," but chose not to "implement such modifications because of

economic considerations." Id.; see also, Ford Motor Co. v. Stubblefield, 171 Ga. App.

331, 341 (1984) (the defendant's "conscious decisions to defer implementation of

safety devices in order to protect its profits" sufficient to support punitive damages);

Reid v. BMW of North America, 430 F. Supp. 2d 1365, 1374 (N.D. Ga. 2006) ("even

if . . . [the defendants] complied with [applicable safety] regulations, other evidence

showing culpable behavior can still justify an award of punitive damages.") (citing

Welsh, 949 F. Supp. at 844).

   When considering punitive damages at the summary judgment stage, it is

important to remember that the issue of "[p]unitive damages is usually a matter for the

jury."  Reid, 430 F. Supp. 2d at 1374 (denying summary judgment as to punitive

damages where issue of fact existed as to whether car manufacturer was aware of defect and failed to warn others) (<u>citing</u> <u>Chicago Hardware & Fixture Co. v.</u> <u>Letterman</u>, 236 Ga. App. 21, 25 (1999)).  Here, the Plaintiff has introduced evidence that the Defendant chose not to incorporate a safer design into the 1993 Explorers due to cost considerations.  This decision saved the Defendant an estimated $10 - $20 per vehicle.  (Mot. for Summ. J., Ex. C, at 12).  The Plaintiff also alleges that the Defendant secretly charged a liability fee that greatly exceeded the cost of actually improving the vehicle's safety.  Finally, there is evidence that the Defendant intentionally failed to warn about the vehicle's risks.  If proven, a jury could find such actions to exhibit willful misconduct, wantonness, or an entire want of care.

The Defendant's full-frontal constitutional assault upon the Georgia punitive damages statute is premature.  The punitive damages law has been applied consistently by Georgia courts against automobile manufacturers. <u>See generally</u>, <u>Ford</u> <u>Motor Co. v. Sasser</u>, 274 Ga. App. 459 (2005) (upholding nearly $14 million award of punitive damages in defective design case); <u>Moseley</u>, 213 Ga. App. at 875 (preserving punitive damages even when defendant complied with regulations); <u>Mack</u> <u>Trucks</u>, 263 Ga. at 539 (affirming constitutionality of punitive damages statute as applied to truck manufacturer); <u>Stubblefield</u>, 171 Ga. App. at 331 (upholding punitive damages in failure to warn case).  The statute has been consistently applied by federal

courts as well.  See, e.g., Action Marine, Inc. v. Continental Carbon Inc., 481 F.3d 1302 (2007) (upholding punitive damage award of $17.5 million under O.C.G.A. § 51-12-5.1); Johansen v. Combustion Engineering, Inc., 170 F.3d 1320 (1999) (preserving punitive damage award of $4.35 million); Softball Country Club-Atlanta v. Decatur Fed'l Savings & Loan Ass'n., 121 F.3d 649, 653 (1997) (applying O.C.G.A. § 51-12-5.1); Reid v. BMW of North America, 430 F. Supp. 2d 1365, 1374 (N.D. Ga. 2006) (denying summary judgment to car manufacturer on issue of punitive damages in design defect case).

The Supreme Court has noted that "[p]unitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568 (1996). The Eleventh Circuit has recognized Georgia's legitimate interest in using the punitive damages statute in "aggravating circumstances in order to penalize, punish, or deter a defendant." Action Marine, 481 F.3d at 1318 n.17 (quoting O.C.G.A. § 51-12-5.1(a). In the absence of any controlling authority to the contrary, this Court will not strike down Georgia's punitive damages statutory scheme as unconstitutional.

## IV.  CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment [Doc. 36] is DENIED.

SO ORDERED, this 2 day of November, 2007.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge